**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

JEFFREY ANTONIO BROWN,

      Petitioner,  :  Case No. 3:17-cv-080

 - vs -          District Judge Thomas M. Rose
              Magistrate Judge Michael R. Merz

CHAE[1] HARRIS, Warden,
 Warren Correctional Institution,

             :

      Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

   This habeas corpus case under 28 U.S.C. § 2254 is before the Court on Petitioner's Objections (ECF No. 29) to the Magistrate Judge's Report and Recommendations recommending dismissal of the Petition with prejudice (ECF No. 26). Judge Rose has recommitted the case for reconsideration in light of the Objections (Recommittal Order, ECF No. 30).

**The Statute of Limitations**

   The Report recommends that Grounds One through Eighteen of the Petition be dismissed as barred by the statute of limitations (ECF No. 26, PageID 3617-26). This was based on a determination, urged by Respondent, that the statute of limitations expired in 2010 and the Petition

---

[1] Spelling corrected from prior pleadings.

was not filed until 2017 (Return, ECF No. 14, PageID 2973). In contrast, Brown claims the time runs from his 2014 resentencing because "the entry of a new judgment normally resets the statute-of-limitations clock," (Objections, ECF No. 29, relying on *In re Stansell*, 828 F.3d 412 (6th Cir. 2016), and *Crangle v. Kelly*, 838 F.3d 673 (6th Cir. 2016).

While the Magistrate Judge relied on *Stansell* to find on initial review that the instant Petition was not second-or-successive, that does not settle the statute of limitations question. The opinion in *Stansell* reaffirmed the continued validity of *Bachman v. Bagley*, 487 F.3d 979 (6th Cir. 2007), and *Rashad v. Lafler*, 675 F.3d 564 (6th Cir. 2012), that the statute runs from conclusion of direct review; here, Brown challenged the absence of advice on post-release control in a collateral attack, not on direct review. Although *Crangle* is to the contrary, as the Warden notes, a published decision of the Sixth Circuit (i.e., both *Bachman* and *Rashad*) cannot be overruled by a later panel, but only by the Sixth Circuit sitting en banc or by the United States Supreme Court (Return, ECF No. 14, citing *Salmi v. Secretary of HHS*, 774 F.2d 685, 689 (6th Cir. 1985). To the same effect, see*United States v. Elbe*, 774 F.3d 885, 891 (6th Cir. 2014); *Darrah v. City of Oak Park,* 255 F.3d 301, 309 (6th Cir. 2001). *Jackson v. Lazaroff,* 2016 U.S. App. LEXIS 23592 (6th Cir. Nov. 21, 2016).

Even if *Crangle* were controlling law on the statute of limitations question, it is distinguishable from this case because Brown did not receive a new worse-than-before sentence in the resentencing. Instead, he received oral notification of the five-year post-release control term and written confirmation of that oral notification. This was the same sentence he had originally received.

**Ground Nineteen:  Physical Presence at Re-Sentencing Hearing**

In his Nineteenth Ground for Relief, Brown complains that his constitution al rights were violated when he was, over his objection, not conveyed to be present in person at his re-sentencing hearing.   The Report considered this  claim on the merits and found that the Second District Court of Appeals' decision on this claim was not an objectively unreasonable application  of the relevant Supreme Court law, particularly *Snyder v. United States*, 291 U.S. 97 (1934)(Report, ECF No. 26, PageID 3626-29).

In his Objections, Mr. Brown discusses again the reasons why he wanted to be present (ECF No. 29, PageID 3651).    Essentially because the matters he sought to raise in person were not appropriate for the limited purpose  of the re-sentencing hearing or because they could be adequately presented in writing, the Magistrate Judge remains unpersuaded Brown suffered any prejudice from not being present.

**Ground Twenty:  Denial of Equal Protection Regarding Post-Release Control**

In his Twentieth Ground for Relief,  Brown claims he was denied equal protection of the laws when the Second District overruled one of his assignments of error on the basis of res judicata. The Report recommended dismissing this claim because    "Brown has not explained how there can have been any equal protection violation in the March 2006 proceeding, nor did he present this claim to the Ohio courts as a federal constitutional claim." (Report, ECF No. 26, PageID 3630).

Brown objects that he "inadvertently made a typographical error while typing this Ground in his Petition . . . .The word Ohio and Federal Criminal Rule 43 is what should be the claim. This

Court must construe this error in Brown's favor." (ECF No. 29, PageID 3652.)

The Twentieth Ground for Relief as it reads in the Petition is:

> Petitioner was deprived of his Federal Rights to Liberty, Due Process and Equal Protection of Law when the Court of Appeals ruled Petitioners' [sic] assignment of error as res judicata where the trial court termination entry violated Federal Criminal Rule 43(A) as it exited [sic] in law on March 9, 2006, as the five-year period of post-release control reflected in the entry was not pronounced in the presence of Petitioner at his original sentencing hearing.

(Petition, ECF No. 1.)

The Report had analyzed this claim as being made under Fed. R. Crim. P. 43. As the Magistrate Judge understand the Objections, Brown is claiming that he omitted Ohio R. Crim. P. 43(A) by mistake. That is a credible claim since his assignment of error on direct appeal included the Ohio Rule. But construing the Petition as including a claim under Ohio Rule 43(A) does not change the result. Assuming the trial court did fail to follow Ohio Criminal Rule 43, that would not state a claim under the United States Constitution. Failure to abide by state law is not itself a constitutional violation. *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985). Violation by a State of its own procedural rules does not necessarily constitute a violation of due process. *Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976); *Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 228 (6th Cir. 1976). "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).

**Ground Twenty-One: Re-Sentencing Without a De Novo Sentencing Hearing**

In his Twenty-First Ground for Relief, Brown alleges he was entitled to a full de novo re-sentencing hearing, instead of a mere oral advisement of the five-year post-release control term. In denying relief on this claim, the Second District relied on *State v. Fischer*, 128 Ohio St. 3d 392 (2010), which set the parameters of proceedings for re-sentencing upon a remand to correct an error in imposition of post-release control. Brown argued that application of *Fischer* to his case violated the constitutional prohibition on ex post facto laws, relying on *Miller v. Florida*, 482 U.S. 423 (1987).

The Report recommended dismissing this claim because *Miller* dealt with a change in sentencing law made retroactive by the Florida legislature and *Fischer* involved no such legislative change (Report, ECF No. 26, PageID 3631-32.) Brown objects and directs the Court's attention to the argument in support of this ground made in his Memorandum in Support of Jurisdiction in the Ohio Supreme Court (State Court Record, ECF No. 13-3 at PageID 1930-31). In that Memorandum, in addition to *Miller, supra*, Brown cites *Rogers v. Tennessee*, 532 U.S. 451 (2001); *Bouie v. South Carolina*, 378 U.S. 347 (1964); and *Weaver v. Graham,* 450 U.S. 24 (1981).

*Bouie v. City of Columbia*, 378 U.S. 347 (1964), involved a lunch counter sit-in to protest racial segregation. In *Bouie* the Supreme Court struck down as unconstitutional a new judicial construction of a trespass statute which applied it to persons who failed to leave a store after notice, as opposed to the prior construction, in which it applied only to those who received notice prior to entry. In *Bouie*, the South Carolina Supreme Court had, by a new interpretation of the trespass statute which it applied retrospectively, made criminal conduct which was innocent when it was done: remaining in a place of public accommodation after being asked to leave when one had had

no notice before entering the store that one was unwanted. That is the most radically unfair sort of retrospective state action: criminalizing primary conduct when it is too late for the subject to conform his conduct to the prohibition.

However, in *Rogers v. Tennessee*, 532 U.S. 451 (2001), the Court distinguished *Bouie* and held that the Due Process Clause does not incorporate as to state judicial decisionmaking all the restrictions imposed on state legislatures by the *Ex Post Facto* Clause. In *Rogers* the Tennessee Supreme Court, as an act of common-law lawmaking, (1) abolished the common-law rule that the death of an assault victim within a year and a day after the assault is a prerequisite to a homicide prosecution and (2) applied the abolition to uphold the murder conviction in that case where death occurred fifteen months after the assault. The United States Supreme Court upheld the conviction, holding that the retroactive abolition of the year-and-a-day rule did not violate Rogers' due process rights. In *Rogers*, the Court described the situations to which it had applied *Bouie*:

> Those decisions instead have uniformly viewed *Bouie* as restricted to its traditional due process roots. In doing so, they have applied *Bouie's* check on retroactive judicial decisionmaking not by reference to the *ex post facto* categories set out in *Calder [v. Bull,* 3 Dall. 386, 1 L. Ed. 648 (1798)]*, but, rather, in accordance with the more basic and general principle of fair warning that *Bouie* so clearly articulated. See, e.g., *United States v. Lanier*, 520 U.S. 259, 266, 137 L. Ed. 2d 432, 117 S. Ct. 1219 (1997) ("Due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope"); *Marks v. United States*, 430 U.S. at 191-192 (Due process protects against judicial infringement of the "right to fair warning" that certain conduct will give rise to criminal penalties); *Rose v. Locke*, 423 U.S. 48, 53, 46 L. Ed. 2d 185, 96 S. Ct. 243 (1975) (per curiam) (upholding defendant's conviction under statute prohibiting "crimes against nature" because, unlike in *Bouie*, the defendant "[could] make no claim that [the statute] afforded no notice that his conduct might be within its scope"); *Douglas v. Buder*, 412 U.S. 430, 432, 37 L. Ed. 2d 52, 93 S. Ct. 2199 (1973) (per curiam) (trial court's construction of the term "arrest" as including a traffic citation, and application of that

> construction to defendant to revoke his probation, was unforeseeable and thus violated due process); *Rabe v. Washington*, 405 U.S. 313, 316, 31 L. Ed. 2d 258, 92 S. Ct. 993 (1972) (per curiam) (reversing conviction under state obscenity law because it did "not give fair notice" that the location of the allegedly obscene exhibition was a vital element of the offense).

532 U.S. at 460. *Weaver*, like *Miller*, involved a Florida statute made retroactive by the legislature.

None of this case law supports Brown's claim. *Fischer* did not expand basic criminal liability at all. Instead it clarified what disposition the Ohio courts must make of cases where post-release control was not properly imposed. This clarification cannot be said to violate anyone's right to fair notice of what conduct the State will punish criminally. To put it another way, a person in Brown's position has no reliance interest in a particular interpretation of what must be done on remand in a post-release control case; no primary ("on the street") conduct of the criminal defendant can possibly be affected by this change.

**Miscellaneous Objections**

1. Brown objects that he "never received a copy of his Petition back after mailing to the Court from this institution." (ECF No. 29, PageID 3638.) When he brought this Clerk's attention, the Clerk responded by letter on April 13, 2017, that the Clerk "does not return time stamped copies of any document filed in our court unless the filer supplies an extra copy we can stamp and return." (PageID 3656). Having said nothing about the matter for ten months , Brown now objects that "[p]ursuant to [28 U.S.C.] § 2250 Brown is entitled to have the Clerk furnish to the petitioner without cost certified copies of such documents or parts of the record on file in his office as may

7

be required by order of the judge before whom the application is pending." That is an accurate quotation of the statute, part of Chapter 153 on habeas corpus, enacted in 1948 when everything filed in the Clerk's Office was filed on paper. In common with other federal courts throughout the country, this Court adopted electronic filing in 2003. In its Order for Answer in this case, the Court required the Respondent to furnish Mr. Brown with a copy of the state court record and of course Respondent is also required to furnish Brown with a pa per copy of everything he files. But Brown has never sought or obtained an order from this judge to furnish him with a copy of his own Petition. § 2250 does not require the Clerk to furnish any paper without a court order. Since he never requested such an order, Brown's objection on this point is not well taken.

2. Brown objects that the Report says he was sentenced by Judge John Kessler when he was in fact sentenced by Judge Richard S. Dodge, citing the State Court Record, ECF No. 13-7, PageID 2900. This first page of the trial transcript shows Judge Dodge as a visiting judge. He had been a regular-serving judge of the Montgomery County Common Pleas Court until his retirement and apparently had been appointed by the Ohio Supreme Court to sit in Judge Kessler's stead. The objection is well taken, but immaterial.

3. Brown objects to the statement that the "Second District held Judge Kessler had erred in failing to orally advise Brown of the five-year term of post-release control." Brown says the Second District did not mention any judge by name. That is correct, but immaterial.

4. Brown objects to the conclusion that the supposed new evidence he points to that he claims would satisfy the actual innocence gateway and permit equitable tolling of the statute of limitations in fact does not satisfy the standard of *McQuiggin v. Perkins*, 569 U.S. 383 (2013). Nevertheless, he does not point in the Objections to any "new evidence" other than that outlined in the Report (ECF No. 26, PageID 3625) or show how any of those facts constitutes new evidence within the

meaning of *McQuiggin*.

5.	Brown objects in general to dismissal because he was not appointed counsel to assist him and has not been given an evidentiary hearing (Objections, ECF No. 29, PageID 3653). This Court's Criminal Justice Act Plan does not provide for appointment of counsel in habeas corpus cases unless an evidentiary hearing is held. Brown does not specify what evidence he would have presented at such a hearing. Presentation of new evidence in habeas corpus beyond that evidence heard by the state courts when they decided the claims in question is generally forbidden. *Cullen v. Pinholster*, 563 U.S. 170 (2011).

**Conclusion**

Having reconsidered the case in light of the Objections, the Magistrate Judge again respectfully recommends that the Petition be dismissed with prejudice, that Brown be denied a certificate of appealability, and that this Court certify to the Sixth Circuit that an appeal would not be taken in good faith.

February 8, 2018.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).